1
2
3
4
5
6           **UNITED STATES BANKRUPTCY COURT**

7           **IN AND FOR THE DISTRICT OF ARIZONA**

8
**In re LAURA F. KAGENVEAMA,**          )          **In Chapter 13 proceedings**
9                                                      )
                                                     )          **Case No. 05-28079-PHX-CGC**
10                                                     )
                                                     )          **UNDER ADVISEMENT DECISION**
11                                                     )          **RE: OBJECTION TO TRUSTEE'S**
                                                     )          **RECOMMENDATION AND PLAN**
12                      **Debtor.**          )          **LENGTH**
   _____)

13
**I.       Introduction**

14
        This case requires the interpretation of a number of revisions to Chapter 13 added by the

15 Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

16
        Prior to BAPCPA, the basic structure of a Chapter 13 plan required a debtor to devote his

17 or her projected disposable income for a minimum of three and a maximum of five years to a

18 standing trustee for distribution to creditors pursuant to a confirmed plan.  The calculation of

19 "projected disposable income" was made by subtracting the debtor's expenses set out on Schedule

20 J from the debtor's income set out on Schedule I.  In this district, the standing trustees established

21 guidelines for acceptable expenses in various categories; in any event, the trustee or a creditor could

22 object to the plan on the basis that income was understated or expenses were too high.  The matter

23 would then be determined by the Court after hearing the relevant evidence.

24
        BAPCPA changed this basic structure in significant ways.  First, while leaving the term

25 "projected disposable income" in Section 1325(b)(1)(B), BAPCPA changed the "three year period"

26 to "applicable commitment period" and modified the definition of "disposable income" in  Section

27 1325(b)(2) to incorporate the concept of "current monthly income" as added in Section 101(10A)

28

and "amounts reasonably necessary to be expended" under Section 707(b)(2)(A) and (B)[1]. These changes have led to questions on two basic points: 1) is "projected disposable income" to be based on the historical calculations required under the definition of "current monthly income" or on the more traditional forward-looking calculations using data from Schedules I and J; and 2) is the "applicable commitment period" a temporal measurement or is it a "multiplier" that sets a monetary minimum required to be paid to unsecured creditors?

## II.    Discussion

### A.    "Projected Disposable Income."

The Court has read and considered the briefs of the parties and the following cases: *In re Alexander et al.*, No. 06-00324-8-JRL (Bankr. E.D.N.C. June 30, 2006) (currently unpublished); *In re Wilbur*, No. 06-20104, 2006 WL 1687586 (Bankr. D. Utah June 21, 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Dew et al.*, No. 06-40154-JJR-13 (Bankr. N.D. Ala. May 31, 2006) (unpublished); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Fuger*, No. 06-20801, 2006 WL 1777341 (Bank. D. Utah June 29, 2006); *In re Grady*, No. 06-60726 CRM, 2006 WL 1689324 (Bankr. N.D. Ga. June 21, 2006); and *In re Kibbe*, 342 B.R. 411 (Bank. D.N.H. 2006).[2] All of these cases struggle with trying to reconcile the forward looking concept of *projected* disposable income with the historically based calculation of "current monthly income." Several

---

[1]The parties agree that this is an "above median" case so that the expense calculations under Section 707(b) are applicable and the "applicable commitment period" is "not less than 5 years." 11 U.S.C. § 1325(b)(3) and (4).

[2]These cases represent the small flood of bankruptcy court decisions in the last several months addressing the issues presented here. *Alexander* is a case provided to the Court by counsel. It has not yet been published. Because the Court finds its reasoning persuasive on all matters in dispute here, a copy is attached to the memorandum decision and it may be referred to by the parties as setting forth this Court's views on the issues presented.

These matters need to be addressed by the appellate courts as soon as practicable to bring some clarity and uniformity so that the Chapter 13 system can function as well as possible under the circumstances.

2

decisions conclude (consistent with the Trustee's position here) that the term "projected disposable income" in Section 1325(b)(1)(B) must have a different meaning from the term "disposable income" defined in Section 1325(b)(2) in order to give meaning to the word "projected." In this way, they conclude that the prior practice of "projecting" disposable income through reference to Schedules I and J is the appropriate measure of this critical Chapter 13 component.

The difficulty is that such an interpretation flies in the face of the plain words of the statute. Care was taken by Congress to modify the old definition of disposable income and to replace it with one based upon "current monthly income." This is clear; there can be no doubt about it. Section 1325(b)(2) states what the definition of "disposable income" is "for the purposes of this subsection"; nowhere else, other than in Section 1325(b)(1)(B), do the words "disposable income" appear in the referenced subsection. Unless the definition applies to "projected disposal income," it has no meaning. As put by Judge Leonard in *Alexander*, "[i]f 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."

The Trustee asserts that it is difficult, if not impossible, to "project" a historical number; this problem is illusory. It is simply a matter of applying the current monthly income amount over the applicable commitment period. However, the Trustee further argues that because Section 1329 still provides that he may seek a modification of a plan after confirmation necessarily means that "projected disposable income" may be modified based upon future increases in a debtor's salary or other income. This implies, the Trustee argues, that "projected disposable income" cannot be a static historical number but rather a flexible future oriented number. But the question of whether such a modification is possible under Chapter 13 as restructured by BAPCPA is not posed by this case and therefore is not ripe for decision. The Court will exercise care, as it must, to decide only issues that are squarely presented and to avoid advisory opinions where the facts do not support a judicial inquiry.

There are, of course, practical difficulties with the conclusion that "projected disposable income" is necessarily defined by "current monthly income." The most obvious is that historical

3

current monthly income[3] may or may not have any relationship to the actual income to be received by the debtors during the course of their Chapter 13 plan. For that purpose, the previous "I and J" approach would seem to yield a more reality-based number. However, Congress has chosen not to rely on I and J, notwithstanding their proven utility,[4] and that is Congress' choice to make. But this case illustrates the problems caused by this approach. Debtor's Schedules I and J yield "disposable income" of $1,523.89; however, "disposable income" as shown on Debtor's B22C form[5] is a -$4.04. Given the stated purposes of BAPCPA, it is both ironic and unfortunate that this Debtor with resources available to pay unsecured creditors will not be required to do so in this case.

B.    "Applicable Commitment Period."

This issue is also controlled by the statutory language. "[A]pplicable commitment" replaced the words "three year" before the word "period." The latter word was unchanged by BAPCPA; thus, its previously widely accepted meaning as a temporal measurement, rather than as a monetary multiplier, would normally still be valid unless compelled to be different by the context. There is no such compulsion here. Indeed, subsection c of Section 1329 makes clear that "applicable commitment period" has a temporal meaning in connection with modification of a plan.

In addition, there is a false dichotomy between "temporal" and "monetary." As pointed out in *In re Fuger*, 2006 WL 1777341 (Bankr. D. Utah), "applicable commitment period" can have both a monetary and a temporal component. The term both fixes the amount to be paid to unsecured creditors and fixes the time over which the payments must be made. If payments are made for less than the "applicable commitment period," then unsecured creditors must be paid in full. 11 U.S.C. section 1325(a)(4)(B). This is a change from prior practice where, under appropriate circumstances,

---

[3]Some commentators have noted that "current monthly income" is neither current, nor monthly, nor income under the statutory definition.

[4]Judge Leonard in *Alexander* points out that Chapter 13 trustees made their concerns on this point known to Congress but that their advice was not accepted. See Culhane and White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 18 AM. BANKR. INST. L. REV. 665, 681 (2005).

[5]This is the official form used to calculate "current monthly income" and "amounts reasonably necessary to be expended" as required by new section 1325(b)(2) and (3).

4

the debtor could "pay off the plan" early (through a housing refinance, for example) by simply paying the remaining amounts due under the plan. Now, such an "early payoff" would require payment in full of all unsecured claims.

However, there are cases, such as this one,[6] where the applicable commitment period is fundamentally irrelevant to the confirmation of the plan. This is because it represents the period over which payments of projected disposable income must be devoted to unsecured creditors; it is NOT the minimum plan duration. Read together, Sections 1325(b)(1)(B) and 1322(d) make that explicit. Section 1325(b)(1)(B) mandates a period of not *less* than five years for the required payments to unsecured creditors and Section 1322(d) provides that for an above median debtor, the plan duration must be not *more* than five years. Because, in this case, there are no required payments to unsecured creditors (projected disposal income being less than zero), the plan duration will be determined by other mandated payments such as those to secured creditors, priority creditors, administrative creditors and any chapter 7 reconciliation amount. It may be less, but it may not be more, than five years.

The Court recognizes that it is counterintuitive that a debtor may confirm a chapter 13 plan where she has no disposable income. However, that is where BAPCPA leads us. By defining "disposable income" in a way that is not based on actual money available going forward but rather as a matrix to determine the amount and duration of payments to unsecured creditors, BAPCPA has sanctioned the confirmation of plans with no "disposable income" where the debtor nevertheless has post-petition excess income from which trustee payments may be made.

The Court will hold a status hearing on **Thursday, August 10, 2006, at 2:30 p.m.** to determine how to proceed in light of this ruling.

So ordered.

**DATED**: July 10, 2006

---

[6] For purposes of this decision, the Court is taking the Form B22C is accurate and complete. Nothing herein is intended to prejudice the right any party may have to challenge that form's correctness under appropriate circumstances.

5

_[signature]_

CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by BNC and/or sent by

auto-generated email to:

Andrew S. Nemeth
Phillips & Associates
3030 N. 3rd Street, #1100
Phoenix, Arizona 85012
Counsel for Debtor

Laura Kagenveama
26 E. Erie Drive
Tempe, Arizona 85282
Debtor

Edward J. Maney
P.O. Box 10434
Phoenix, Arizona 85064-0434
Chapter 13 Trustee

Office of U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, Arizona 85003

6

SO ORDERED.

SIGNED this 30 day of June, 2006.



J. Rich Leonard
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

| | |
|---|---|
| FRANCES CLEO ALEXANDER, | 06-00324-8-JRL |
| RUTH ANISTEAD BOWENS, | 06-00147-8-JRL |
| BARBARA ANN BRASWELL, | 06-00318-8-JRL |
| GLADYS PARKER BULLUCK, | 06-00149-8-JRL |
| LOUISE VAUGHAN CHERRY, | 06-00089-8-JRL |
| BRIAN ELLIOT, NATALIE ELLIOT, | 06-00811-8-JRL |
| JOHN ROBERT EZELL, MARILYN LABIANO EZELL, | 05-10689-8-JRL |
| CLEVELAND RUDOLPH FOSTER, JR., BRENDA BELL FOSTER, | 06-00300-8-JRL |
| GERTRUDE PRICE JOHNSON, | 05-10652-8-JRL |
| MARVIN NATHANIEL JOHNSTON, HILDAGARDE HARRISON JOHNSTON, | 05-10625-8-JRL |
| DAVID ANTHONY JONES, LORIE WILSON JONES, | 05-10597-8-JRL |
| JOHN MICHAEL JORDAN, TAMMIE PATTERSON JORDAN, | 05-10617-8-JRL |
| JAMES KNIGHT, JR., CAROLYN JEAN KNIGHT, | 06-00128-8-JRL |
| ROBIN WAYNE NORDAN, | 05-10699-8-JRL |
| DARLICIA CATRINA POPE, | 06-00027-8-JRL |
| GERALDINE RICHARDSON, | 06-00049-8-JRL |
| JESSE JAMES RUDD, | 06-00064-8-JRL |
| ROBERT MARTIN STOKELY, CYNTHIA MURDOCH STOKELY, | 05-10598-8-JRL |
| RONALD LAWRENCE THOMAS, TRUDI SAMANTHA THOMAS, | 06-00074-8-JRL |
| TINA LOUISE WATSON, | 05-10612-8-JRL |
| RICHARD DEAN WEBB, CRYSTAL DAWN WEBB, | 06-00098-8-JRL |
| AGNES DENTON WHITLEY, | 06-00299-8-JRL |
| ADRIAN GERAND WILLIAMS, EVELYN DAVIS | 05-10619-8-JRL |

WILLIAMS,
NADINE EATMON WILSON,
VERA BURTON WOODARD,

**06-00177-8-JRL**
**05-10679-8-JRL**

## Debtors.

---

## ORDER

These cases are before the court on the debtors' objections to the trustee's motions for confirmation. On April 27, 2006, the court conducted a hearing on these matters in Wilson, North Carolina. Because resolution of the issues before the court will directly impact the functioning of Chapter 13, the court opened the hearing to all interested Chapter 13 debtors, trustees, and creditors in the district and authorized the filing of briefs before and after the hearing.[1]

In this district, after reviewing a debtor's petition, schedules, statements, proposed plan, and information provided at the § 341 meeting, the trustee will move for confirmation of a plan that he asserts is consistent with the requirements of Chapter 13. The motion may or may not incorporate all of the provisions from the debtor's proposed plan. The debtor is free to object to the trustee's motion as is any other party in interest.

In the subject cases, the debtors propose plans with fixed durations subject to early termination. The early termination would take effect once the allowed secured claims, priority claims, and administrative claims required to be paid inside the plan are paid in full plus payment of any required dividend to non-priority, unsecured creditors. The proposed plans include the following language:

This Chapter 13 plan will be deemed complete and shall terminate and a discharge shall be

---

[1]The last brief was filed June 9, 2006 by eCast Settlement Corporation.

2

entered, at the earlier of, the expiration of said duration [the estimated proposed duration of the plan] or the payment in full of: (1) The following claims, proposed to be paid "inside" the plan, to the extent "allowed": (1) Arrearage claims on secured debts, (ii) Secured claims (not including those to be paid "outside" the plan), (iii) Unsecured priority claims, (iv) Cosign protect claims (only where the Debtor proposes such treatment), plus (2) The required divided to unsecured, non-priority creditors, if any is required by 11 U.S.C. 1325(b). (For purposes of 11 U.S.C. 1325(b)(1)(B), "unsecured creditors" shall be deemed to mean all unsecured creditors, including both priority and non-priority unsecured creditors.)

In the motions for confirmation filed by the Chapter 13 trustee in these cases, the above language is not incorporated. The debtors, therefore, object to the trustee's motions for confirmation in these cases. The debtors assert that, in formulating a plan, they must estimate how much will be due and allowed on secured, priority, and administrative claims. The debtors, however, contend that claims are often filed and allowed in amounts less than estimated. The debtors argue that, by failing to include the possibility of early termination in the motions for confirmation, the trustee is requiring a fixed duration based upon a "pot plan" formula approach, disregarding the possibility that some claims might be allowed for less than anticipated.

The trustee asserts that, by including the early termination provisions in their proposed plans, the debtors are attempting to end the plans sooner than the applicable commitment period without full payment to unsecured creditors. The trustee contends that the applicable commitment period functions as a temporal period of either 3 or 5 years depending upon a debtor's current monthly income. 11 U.S.C. § 1325(b)(4). "Applicable commitment period" and "current monthly income" are new terms under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The trustee argues that, based upon the plain language of 11 U.S.C. § 1325(b)(4)(B), the only way a plan can be shorter than the applicable commitment period is if all allowed unsecured claims are paid in full over a shorter period of time. The

3

debtors disagree with the trustee's interpretation of "applicable commitment period" and assert that the term functions as a multiplier rather than as a period of time.

While the trustee made no specific objection to the debtors' calculations of disposable income under BAPCPA, he frowns upon the outcome resulting from those calculations, disagrees with the debtors' interpretation of "projected disposable income," and asserts that the debtors are violating the good faith requirement under § 1325(a)(3) by not proposing plans that make substantial contributions to unsecured creditors for the applicable commitment period.

### Calculation of "Disposable Income"

Disposable income is now defined as "current monthly income . . . other than child support payments, foster care payments, or disability payments for a dependent child . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(1)(2). Current monthly income is a new term under BAPCPA defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" during the 6-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A)(A). CMI excludes "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . ." 11 U.S.C. § 101(10A)(B).

Prior to the passage of BAPCPA, in order to arrive at a disposable income figure for any Chapter 13 debtor, one would subtract monthly expenses reported on Schedule J from monthly income reported on Schedule I. The court had discretion regarding whether the listed expenses were reasonably necessary for the support of the debtor and any dependents. Now, there is a bifurcated process that hinges upon whether

4

a debtor's current monthly income is above or below the median family income for a similarly-sized household. In addition to Schedule I and J, Interim Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income prepared on the official form, known as "Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." The debtor reports her current monthly income in Part I of Form B22C and determines whether her currently monthly income is above or below the median family income in Part II of Form B22C. If a debtor's currently monthly income, multiplied by 12, is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended" are determined in accordance with § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Thus, an above-median income debtor calculates her disposable income figure using the remainder of Form B22C taking allowed deductions under § 707(b)(2). To arrive at a disposable income figure for a below-median income debtor, one takes the debtor's currently monthly income from Part I of Form B22C and subtracts the total monthly expenses from Schedule J. While there is rigidity in arriving at the disposable income figure for the above-median debtor, the court has more flexibility in determining whether the expenses of the below-median income debtor are reasonably necessary.[2]

At the hearing, three of the four Chapter 13 trustees in this district reported their frustrations with

[2]Difficult questions beyond the reach of this opinion remain about whether BAPCPA changes the manner in which Schedule J expenses should be fairly computed for below-median income families. Because disposable income is now an amount that goes only to unsecured creditors rather than for the entire plan payment, must below-median income debtors also be allowed to subtract their secured and priority payments to be made through the plan as reasonable and necessary expenses? And do basic notions of equal protection require that expenses deemed by statute to be reasonable and necessary for above-median income debtors also be allowed for below-median income debtors, although pre-. BACPA courts routinely denied them this treatment? These are questions for another day.

5

this new calculation method, noting that the old I and J comparison revealed a more accurate depiction of disposable income than the calculation method employed under the new law. A debtor who may have had disposable income under the old law may now have little or no disposable income using the new calculation method. The bulk of the cases before the court involve below-median income debtors, and the results seem to differ based upon individualized circumstances regarding whether a below-median income debtor has more disposable income under the old or new law.[3]

However, for the seven cases of above-median income debtors, the debtors uniformly have less disposable income using the new calculation method.[4] The trustees reported that this is the typical result for above-median income debtors under the new law. Perhaps Congress, in an effort to make higher income debtors pay more to their unsecured creditors, unwittingly reached the opposite result.

Despite criticisms that the old law was better, in discerning congressional intent, the starting point is the "existing statutory text" and "not the predecessor statutes." Lamie v. U.S. Trustee, 540 U.S. 526, 533 (2004). "When the statute's language is plain, the sole function of the court—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Id. The court finds that § 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form

---

[3] Attachment A is a chart showing the computation of disposable income in each of the cases consolidated for argument. Neither the trustee nor any creditor has challenged the accuracy of these figures. *See* Attachment A. For example, David and Lorie Jones would have $520.00 of disposable income under the old law, but they have $269.91 of disposable income using the new § 1325(b) calculation method; whereas, Richard and Crystal Webb would have $403.00 of disposable income under the old law, yet they have $1,233.65 of disposable income under the new law.

[4] *See* Attachment A. For example, under the old law, Robert and Cynthia Stokely would have $774.00 of disposable income. Under the new law, their disposable income figure is $66.38. John and Tammie Jordan would have $1,195.00 of disposable income under the old law, but their disposable income figure is -$105.74 under the new law.

6

B22C is the tool for arriving at that disposable income figure under the new law. One of the Chapter 13 trustees as well as a creditor's attorney appearing at the hearing argued that calculating disposable income under BAPCPA fails to curtail abuse as intended and leads to such absurd results that the new formula should be disregarded and supplanted by the old I and J comparison for all debtors.

The concept of disposable income as the bankruptcy system knew it has changed. However, this court will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd simply because it leads to results that are not aligned with the old law. *See* In re Barr, 341 B.R. 181, 185 (Bankr. M.D.N.C. Apr. 5, 2006)("While many sources question whether sections 707(b)(2) and 1325(b) represent a fair and effective approach to catching abusers of the bankruptcy system or to insuring that debtors who can pay do pay, the court does not believe that the result in this case of applying section 1325(b)(3) as written can be rejected as being absurd").

As noted by authors Culhane and White, Chapter 13 trustees notified Congress of their concerns regarding this legislation before it was passed:

Chapter 13 trustees recognized early on that this redefinition of disposable income meant some high-income debtors would pay less than they would have under the variant judicial tests and local legal culture that previously measured the chapter 13 disposable income. The chapter 13 trustees repeatedly made their concerns known to Congress, asking that CMI less deductions be a minimum, not the maximum, but no changes were made.

Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM. BANKR. INST. L. REV. 665, 681 (2005). "As in Lamie, 'this alert, followed by the Legislature's nonresponse, should support a presumption of legislature awareness and intention.'" Id. (quoting Lamie, 540 U.S. at 541). However, even if this law is producing unintended results, it is the job of Congress to amend the statute. Lamie, 540 U.S. at 542. "'It is beyond our province to rescue Congress

7

from its drafting errors, and to provide for what we might think . . . is the preferred result.'" Lamie, 540 U.S. at 542 (quoting US v. Granderson, 511 U.S. 39, 68 (1994)(concurring opinion)).

## Calculation of "Projected Disposable Income"

In the event of an objection to confirmation, the debtors are required to provide "projected disposable income" to be received during the applicable commitment period to their unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). The court treats the trustee's motions for confirmation in the subject cases as objections to the debtors' proposed plans, as he eliminates the early termination language included in those plans and disagrees with the debtors' interpretation of projected disposable income and applicable commitment period under the law as amended by BAPCPA. Thus, the question is how to calculate "projected disposable income" in light of the new definition of "disposable income" which includes the current monthly income calculation based upon the six months preceding the bankruptcy filing. 11 U.S.C. §§ 101(10A), 1325(b).

In Hardacre, a case involving an above-median income debtor, the court concluded that "'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); *see also* In re Dew, No. 06-40154-JJR-13, 2006 WL 1691130 at *4 (Bankr. N.D. Ala. Jun. 21, 2006)(agreeing with the treatment of "projected disposable income" in Hardacre and stating that one must look to Schedules I and J in order to determine if a below-median income debtor has committed all of her projected disposable income under the plan); In re Grady, No. 06-60726, 2006 WL 1689324 at *3 (Bankr. N.D. Ga. Jun. 21, 2006)(agreeing with Hardacre's analysis of "projected disposable income" and finding that the above-median income debtors could use the projected disposable income figure based upon

8

Schedules I and J rather than Form B22C); In re Kibbe, No. 06-10012-MWV, 2006 WL 1300993 at *2-3 (Bankr. D.N.H. Apr. 14, 2006)(agreeing with Hardacre that projected disposable income is "forward-looking," that it "refers to income that the debtor reasonably expects to receive during the term of her plan," and that, at least for a below-median income debtor, it should be based on the debtor's income and expenses set forth in Schedules I and J).

Aside from using current monthly income to determine a debtor's sources of revenue, Hardacre and its progeny appear to view "projected disposable income" as a term separate and apart from the new definition of "disposable income." *See* Hardacre, 338 B.R. at 723. This court disagrees with that interpretation. As observed by the Honorable Keith M. Lundin, where projected disposable income was a "forward looking concept, requiring bankruptcy courts to 'project' the debtor's income into the future," it has been "transformed by new § 1325(b)(2)." Keith M. Lundin, *Section by Section Analysis of Chapter 13 After BAPCPA*, NC BAR ASSOC. 28ᵀᴴ ANNUAL BANKR. INST. 31 (2005).

In Jass, a case involving above-median income debtors, the court took a slightly different approach. In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006). The court held that it would "presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." Id. at 418. Under this interpretation, a debtor can rebut the presumption by providing "specific evidence as to how the numbers reflected on Form B22C are inadequate projections of their future finances." Id. at 419. If the presumption is rebutted, then the court will allow the debtor to use Schedules I and J to determine "projected disposable income." Id.

9

"Projected disposable income" is a term predating BAPCPA. In a 1995 opinion, the Fourth Circuit explained that "[p]rojected disposable income typically is calculated by multiplying a debtor's monthly income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of that income which is 'disposable' according to the statutory definition." In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995)(emphasis added); *see also* Commercial Credit Corp. v. Killough, 900 F.2d 61, 64 (5th Cir. 1990)(stating that, in order to arrive at projected disposable income, one must multiply the debtor's monthly income by the amount of months in the plan and then "assess the amount of the debtor's income that is 'disposable'"). Thus, projected disposable income has been traditionally calculated in conjunction with the definition of disposable income.

This interpretation of projected disposable income is consistent with a plain reading of the statute. Both "projected disposable income" and "disposable income" fall under subsection (b) of § 1325. First, (b)(1) states that projected disposable income is to be applied toward unsecured creditors under the plan. Then, (b)(2) states "For purposes of this subsection, the term "disposable income" means . . . ." 11 U.S.C. § 1325(b)(2). If "disposable income" is not linked to "projected disposable income" then it is just a floating definition with no apparent purpose.

In McGuire, the court held that BAPCPA had not altered the Eighth Circuit's holding in Rowley v. Yarnell, 22 F.3d 190 (8th Cir. 1994) that projected disposable income changes yearly based upon the debtor's actual income and expenses. In re McGuire, No. 06-60054, 2006 WL 1527146 at *5 (Bankr. W.D. Mo. Jun. 1, 2006). This court disagrees with that interpretation of projected disposable income, as it is based upon the old definition of disposable income that included "income which is received by the debtor." 11 U.S.C. § 1325(b)(2) (prior to Oct. 17, 2005). What is now considered "disposable" is based

10

upon historical data—current monthly income derived from the six-month period preceding the bankruptcy filing. 11 U.S.C. §§ 101(10A), 1325(b)(2). The court finds that, in order to arrive at "projected disposable income," one simply takes the calculation mandated by § 1325(b)(2) and does the math.

Some of the cases before the court involve debtors with no disposable income based upon the new statutory calculation method . In Kibbe, the court was faced with a debtor who had no disposable income under the new law and, therefore, asserted that she had no projected disposable income under § 1325(b)(1)(B) to commit to unsecured creditors. In re Kibbe, No. 06-10012-MWV, 2006 WL 1300993 (Bankr. N.H. Apr. 14, 2006). The court disagreed with the debtor's interpretation of "projected disposable income," finding that it was based upon the debtor's current income and expenses pursuant to Schedules I and J. Id. at *3. Thus, even though the debtor had zero disposable income under the new calculation method, the court found that she had projected disposable income to contribute to her unsecured creditors. Id. Because this court follows the Fourth Circuit standard and calculates projected disposable income with specific reference to the statutory definition of disposable income, debtors with no disposable income under the new law have no projected disposable income.

To veterans of Chapter 13 practice, it runs afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan. Yet BACPA permits precisely that.[5]

---

[5] Plan feasibility is no longer dictated by the disposable income calculation. The court disagrees with the outcome in Schanuth where the court determined that the debtors' plan was infeasible because the debtors' plan payments exceeded disposable income as calculated under the new law. In re Schanuth, No. 06-40056, 2006 WL 1515851 *2 (Bankr. W.D. Mo. May 25, 2006). The male debtor received social security benefits that had been excluded from the currently monthly income calculation under § 101(10A)(B). The court said that, in order to propose a feasible plan, the debtors could voluntarily add the social security benefits to their disposable income calculation. Id. This view of feasibility appears to be based upon the old definition of disposable income.

11

Because the pre-BAPCPA definition of "disposable income" calculated a real number rather than a statutory artifact, it largely mirrored § 1322(a)(1)'s basic requirement that the debtor have future earnings or income "as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Because disposable income largely took into consideration all income and all expenses, a debtor with no positive number simply had no means to fund the added costs of a Chapter 13 plan. The result is different under BAPCPA. For any number of reasons, because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items that, bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan. The debtor is at least entitled to try.

## Interpretation of "Applicable Commitment Period"

The court next looks at the applicable commitment period. The applicable commitment period is calculated by taking the current monthly income of the debtor and the debtor's spouse combined, multiplying it by 12, and then comparing it to the median family income in the applicable state for comparably sized households. 11 U.S.C. § 1325(b)(4)(A). The median family income is calculated and reported by the Bureau of the Census. 11 U.S.C. § 101(39A). If the debtor's current monthly income exceeds the median family income for similarly-sized households, then the applicable commitment period is not less than 5 years.

12

11 U.S.C. § 1325(b)(4)(A)(ii)(I)-(III). Otherwise, the applicable commitment period is three years. 11 U.S.C. § 1325(b)(4)(A)(i).

The debtors assert that "applicable commitment period" should be interpreted as a multiplier and not as a specific plan duration. The word "period," read plainly, denotes a portion of time. *See* WEBSTER'S NEW WORLD DICTIONARY 1004 (3d. College ed. 1994). Moreover, the statute clearly states that the only way to shorten an applicable commitment period of 3 or 5 years is "if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)((B). The court finds that "applicable commitment period" is a temporal requirement. *See* In re McGuire, No. 06-60054, 2006 WL 1527146 at *5 (Bankr. W.D. Mo. Jun. 1, 2006); In re Dew, No. 06-40154, 2006 WL 1691130 at *5 (Bankr. N.D. Ala. Jun. 21, 2006); In re Schanuth, No. 06-40056, 2006 WL 1515851 at *4 (Bankr. W.D. Mo. May 25, 2006). If Congress wanted the applicable commitment period to function as a multiplier, it could have stated so in the statute. Schanuth, 2006 WL 1515851 at *4 (noting that Congress specified use of a multiplier in § 1325(b)(4)(A)(ii) when requiring a five-year applicable commitment period for a debtor whose current monthly income "when multiplied by 12" is not less than the median family income).

The cases before the court involve debtors with incomes that span above and below the median family income for similarly-sized households. Thus, in a case involving an above-median income debtor with projected disposable income, the applicable commitment period is 5 years. 11 U.S.C. § 1325(b)(4)(A)(ii)(II)-(III). Otherwise, a debtor with projected disposable income will have an applicable commitment period of 3 years. 11 U.S.C. § 1325(b)(4)(A)(i). The plan period can only be shortened if the debtor fully pays her allowed unsecured claims over a shorter period. 11 U.S.C. § 1325(b)(4)(B).

Because applicable commitment period is a term the statute makes relevant only with regard to the

13

required payment of projected disposable income to unsecured creditors and not to any other plan payments or requirements, it simply does not come into play where no projected disposable income must be taken into account. This is consistent with a plain reading of the Code. "Applicable commitment period" appears in subsection (b) of § 1325. First, in (b)(1)(B), it states that "projected disposable income to be received in the applicable commitment period" is to be applied to unsecured creditors. Then, in (b)(4), it states "For purposes of this subsection, the 'applicable commitment' . . ." is three or five years. The applicable commitment period appears to be exclusively linked to subsection (b) of § 1325. This conclusion is bolstered by § 1329(c), which references applicable commitment period in connection with § 1325(b)(1)(B). 11 U.S.C. § 1329(c). Moreover, § 1322(d), which discusses Chapter 13 plan length, does not mention the term "applicable commitment period." Section 1322(d)(1) states that, for debtors with median income or above, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). Section 1322(d)(2) states that, for debtors with below-median income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." These provisions establish a maximum plan length, but they do not require a minimum commitment period. Accordingly, a debtor with no projected disposable income is free to meet the other confirmation requirements of § 1322 and § 1325 in whatever period of time he may feasibly do so. Obviously, secured and priority creditors entitled to payment in full under the plan would rather be paid sooner than later, and there is no reason to extend plans artificially if there is no requirement of a dividend to be paid to unsecured creditors over time.

**Good Faith Requirement**

14

Section 1325(a)(3) allows a court to confirm a plan that has been proposed in good faith.

11 U.S.C. § 1325(a)(3). The trustee asserts that the debtors are failing to comply with the good faith requirement by not proposing plans that make substantial repayments to unsecured creditors, citing <u>Deans</u> <u>v. O'Donnell</u>, 692 F.2d 968 (4th Cir. 1982). The Fourth Circuit in <u>Deans</u> made clear that there was no minimum repayment requirement in order to meet the good faith test. <u>Deans</u>, 692 F.2d at 971. The court stated, however, that "failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts." <u>Id</u>. at 972. But if a debtor follows the calculation method for determining disposable income under § 1325(b)(2), the debtor is not manipulating the statute. While this figure may differ from what was historically known to be "disposable income," the debtor is simply complying with the new law.

This court agrees with the opinion rendered by the Bankruptcy Court for the Middle District of North Carolina that the debtor's disposable income must be determined under § 1325(b) and not as an element of good faith under § 1325(a)(3). In re Barr, 341 B.R. 181, 186 (Bankr. M.D.N.C. 2006); *see also* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM. BANKR. INST. L. REV. 665, 681 (2005)("[T]he very specific language of section 1325(b)(2) displaces any such use of chapter 13 "good faith," even assuming that phrase has any relevance to minimum payments after the 1984 amendments. Once again, Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations. One can understand why bankruptcy judges would chafe at such restrictions, but that does not mean that Congress did not mean what it said."). So long as the debtor calculates the projected disposable income with specific reference to the new definition of disposable income and commits that projected disposable income to pay unsecured

15

creditors for the applicable commitment period, she is in good faith compliance with the Code. §
1325(b)(1)(B). As noted above, the commitment period may be decreased if the debtor is able to fully pay
her allowed unsecured claims during a shorter period of time. If the debtors have no projected disposable
income, then there is no applicable commitment period.

This district has run a hugely successful Chapter 13 program for decades. Administered by four
veteran trustees under established local rules and principles that generated little litigation (and thus
transactional costs), success rates have approached 50% and returned millions of dollars to creditors
(secured and unsecured) throughout North Carolina and the nation.[6] The system was not broken. Whether
it can survive the changes mandated by BAPCPA remains to be seen. But the court's job is to interpret the
new statute as clearly written, not to nostalgically preserve the past by seizing on isolated words such as
"good faith" and "projected" and inflating their meaning beyond justification.

Chapter 13 plans may be confirmed in these cases in accordance with this order. In the cases on
Attachment A showing disposable income under the BAPCPA calculation method, the debtors' objections
are overruled, and the plans must make the disposable income shown available for unsecured creditors[7]
during the requisite applicable commitment period. In those cases on Attachment A showing no disposable
income under the BAPCPA calculation method, the debtors' objections are sustained, and the plans may

---

[6] In 2005, the Chapter 13 trustees in this district disbursed a total of $63,662,191.17 to
creditors, and $17,718,829.62 of those monies went to unsecured creditors.

[7] The court concurs with the view expressed in In re Wilbur, No. 06-20104, 2006 WL
1687586 (Bankr. D. Utah Jun. 21, 2006) that this is the amount payable to unsecured creditors other
than priority creditors; credit for payment of priority claims has already been provided the debtors in
the calculation of disposable income by the subtraction permitted by § 707(b)(2)(A)(iv), as
incorporated by § 1325(b)(3).

16

| | | | |
|---|---|---|---|
| Jones<br>05-10597-8-JRL | $520.00 | $269.61 | N/A |
| Jordan<br>05-10617-8-JRL | $1,195.00 | N/A | -$105.74 |
| Knight<br>06-00128-8-JRL | $586.00 | N/A | -$168.24 |
| Nordan<br>05-10699-8-JRL | $322.00 | $1,110.24 | N/A |
| Pope<br>06-00027-8-JRL | $256.00 | $317.33 | N/A |
| Richardson<br>06-00049-8-JRL | $284.00 | $534.55 | N/A |
| Rudd<br>06-00064-8-JRL | $270.00 | $551.38 | N/A |
| Stokely<br>05-10598-8-JRL | $774.00 | N/A | $66.38 |
| Thomas<br>06-00074-8-JRL | $455.00 | N/A | -$50.69 |
| Watson<br>05-10612-8-JRL | $349.00 | $1,307.76 | N/A |
| Webb<br>06-00098-8-JRL | $403.00 | $1,233.65 | N/A |
| Whitley<br>06-00299-8-JRL | $201.00 | -$1,541.59 | N/A |
| Williams<br>05-10619-8-JRL | $672.00 | N/A | $225.17 |
| Wilson<br>06-00177-8-JRL | $307.00 | -$1,297.12 | N/A |
| Woodard<br>05-10679-8-JRL | $382.00 | -$62.93 | N/A |

"END OF DOCUMENT"

18