# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re LAURA F. KAGENVEAMA,<br><br><br><br><br>Debtor. | In Chapter 13 proceedings<br><br>Case No. 05-28079-PHX-CGC<br><br>UNDER ADVISEMENT DECISION RE: OBJECTION TO TRUSTEE'S RECOMMENDATION AND PLAN LENGTH (Amended) |

## I. Introduction

This case requires the interpretation of a number of revisions to Chapter 13 added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Prior to BAPCPA, the basic structure of a Chapter 13 plan required a debtor to devote his or her projected disposable income for a minimum of three and a maximum of five years to a standing trustee for distribution to creditors pursuant to a confirmed plan. The calculation of "projected disposable income" was made by subtracting the debtor's expenses set out on Schedule J from the debtor's income set out on Schedule I. In this district, the standing trustees established guidelines for acceptable expenses in various categories; in any event, the trustee or a creditor could object to the plan on the basis that income was understated or expenses were too high. The matter would then be determined by the Court after hearing the relevant evidence.

BAPCPA changed this basic structure in significant ways. First, while leaving the term "projected disposable income" in Section 1325(b)(1)(B), BAPCPA changed the "three year period" to "applicable commitment period" and modified the definition of "disposable income" in Section 1325(b)(2) to incorporate the concept of "current monthly income" as added in Section 101(10A)

and "amounts reasonably necessary to be expended" under Section 707(b)(2)(A) and (B)[1]. These changes have led to questions on two basic points: 1) is "projected disposable income" to be based on the historical calculations required under the definition of "current monthly income" or on the more traditional forward-looking calculations using data from Schedules I and J; and 2) is the "applicable commitment period" a temporal measurement or is it a "multiplier" that sets a monetary minimum required to be paid to unsecured creditors?

**II.    Discussion**

    A.    "Projected Disposable Income."

The Court has read and considered the briefs of the parties and the following cases: *In re Alexander et al.*, 2006 WL 1876527 (Bankr. E.D.N.C. June 30, 2006) ; *In re Wilbur*, No. 06-20104, 2006 WL 1687586 (Bankr. D. Utah June 21, 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Dew et al.*, No. 06-40154-JJR-13 (Bankr. N.D. Ala. May 31, 2006) (unpublished); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Fuger*, No. 06-20801, 2006 WL 1777341 (Bank. D. Utah June 29, 2006); *In re Grady*, No. 06-60726 CRM, 2006 WL 1689324 (Bankr. N.D. Ga. June 21, 2006); and *In re Kibbe*, 342 B.R. 411 (Bank. D.N.H. 2006).[2] All of these cases struggle with trying to reconcile the forward looking concept of *projected* disposable income with the historically based calculation of "current monthly income." Several decisions conclude (consistent with the Trustee's position here) that the term "projected disposable income" in Section

---

[1] The parties agree that this is an "above median" case so that the expense calculations under Section 707(b) are applicable and the "applicable commitment period" is "not less than 5 years." 11 U.S.C. § 1325(b)(3) and (4).

[2] These cases represent the small flood of bankruptcy court decisions in the last several months addressing the issues presented here. Because the Court finds the reasoning in *Anderson* persuasive on all matters in dispute here, it may be referred to by the parties as setting forth this Court's views on the issues presented.

These matters need to be addressed by the appellate courts as soon as practicable to bring some clarity and uniformity so that the Chapter 13 system can function as well as possible under the circumstances.

1325(b)(1)(B) must have a different meaning from the term "disposable income" defined in Section 1325(b)(2) in order to give meaning to the word "projected." In this way, they conclude that the prior practice of "projecting" disposable income through reference to Schedules I and J is the appropriate measure of this critical Chapter 13 component.

The difficulty is that such an interpretation flies in the face of the plain words of the statute. Care was taken by Congress to modify the old definition of disposable income and to replace it with one based upon "current monthly income." This is clear; there can be no doubt about it. Section 1325(b)(2) states what the definition of "disposable income" is "for the purposes of this subsection"; nowhere else, other than in Section 1325(b)(1)(B), do the words "disposable income" appear in the referenced subsection. Unless the definition applies to "projected disposal income," it has no meaning. As put by Judge Leonard in *Alexander*, "[i]f 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."

The Trustee asserts that it is difficult, if not impossible, to "project" a historical number; this problem is illusory. It is simply a matter of applying the current monthly income amount over the applicable commitment period. However, the Trustee further argues that because Section 1329 still provides that he may seek a modification of a plan after confirmation necessarily means that "projected disposable income" may be modified based upon future increases in a debtor's salary or other income. This implies, the Trustee argues, that "projected disposable income" cannot be a static historical number but rather a flexible future oriented number. But the question of whether such a modification is possible under Chapter 13 as restructured by BAPCPA is not posed by this case and therefore is not ripe for decision. The Court will exercise care, as it must, to decide only issues that are squarely presented and to avoid advisory opinions where the facts do not support a judicial inquiry.

There are, of course, practical difficulties with the conclusion that "projected disposable income" is necessarily defined by "current monthly income." The most obvious is that historical

3

Case 2:05-bk-28079-CGC    Doc 29    Filed 07/18/06    Entered 07/18/06 15:58:46    Desc
Main Document    Page 3 of 6

current monthly income[3] may or may not have any relationship to the actual income to be received by the debtors during the course of their Chapter 13 plan. For that purpose, the previous "I and J" approach would seem to yield a more reality-based number. However, Congress has chosen not to rely on I and J, notwithstanding their proven utility,[4] and that is Congress' choice to make. But this case illustrates the problems caused by this approach. Debtor's Schedules I and J yield "disposable income" of $1,523.89; however, "disposable income" as shown on Debtor's B22C form[5] is a -$4.04. Given the stated purposes of BAPCPA, it is both ironic and unfortunate that this Debtor with resources available to pay unsecured creditors will not be required to do so in this case.

    B.    "Applicable Commitment Period."

This issue is also controlled by the statutory language. "[A]pplicable commitment" replaced the words "three year" before the word "period." The latter word was unchanged by BAPCPA; thus, its previously widely accepted meaning as a temporal measurement, rather than as a monetary multiplier, would normally still be valid unless compelled to be different by the context. There is no such compulsion here. Indeed, subsection c of Section 1329 makes clear that "applicable commitment period" has a temporal meaning in connection with modification of a plan.

In addition, there is a false dichotomy between "temporal" and "monetary." As pointed out in *In re Fuger*, 2006 WL 1777341 (Bankr. D. Utah), "applicable commitment period" can have both a monetary and a temporal component. The term both fixes the amount to be paid to unsecured creditors and fixes the time over which the payments must be made. If payments are made for less than the "applicable commitment period," then unsecured creditors must be paid in full. 11 U.S.C. section 1325(a)(4)(B). This is a change from prior practice where, under appropriate circumstances,

---

[3]Some commentators have noted that "current monthly income" is neither current, nor monthly, nor income under the statutory definition.

[4]Judge Leonard in *Alexander* points out that Chapter 13 trustees made their concerns on this point known to Congress but that their advice was not accepted. See Culhane and White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 18 AM. BANKR. INST. L. REV. 665, 681 (2005).

[5]This is the official form used to calculate "current monthly income" and "amounts reasonably necessary to be expended" as required by new section 1325(b)(2) and (3).

4

the debtor could "pay off the plan" early (through a housing refinance, for example) by simply paying the remaining amounts due under the plan. Now, such an "early payoff" would require payment in full of all unsecured claims.

However, there are cases, such as this one,[6] where the applicable commitment period is fundamentally irrelevant to the confirmation of the plan. This is because it represents the period over which payments of projected disposable income must be devoted to unsecured creditors; it is NOT the minimum plan duration. Read together, Sections 1325(b)(1)(B) and 1322(d) make that explicit. Section 1325(b)(1)(B) mandates a period of not *less* than five years for the required payments to unsecured creditors and Section 1322(d) provides that for an above median debtor, the plan duration must be not *more* than five years. Because, in this case, there are no required payments to unsecured creditors (projected disposal income being less than zero), the plan duration will be determined by other mandated payments such as those to secured creditors, priority creditors, administrative creditors and any chapter 7 reconciliation amount. It may be less, but it may not be more, than five years.

The Court recognizes that it is counterintuitive that a debtor may confirm a chapter 13 plan where she has no disposable income. However, that is where BAPCPA leads us. By defining "disposable income" in a way that is not based on actual money available going forward but rather as a matrix to determine the amount and duration of payments to unsecured creditors, BAPCPA has sanctioned the confirmation of plans with no "disposable income" where the debtor nevertheless has post-petition excess income from which trustee payments may be made.

The Court will hold a status hearing on **Thursday, August 10, 2006, at 2:30 p.m.** to determine how to proceed in light of this ruling.

So ordered.

**DATED**: July 18, 2006

---

[6]For purposes of this decision, the Court is taking the Form B22C is accurate and complete. Nothing herein is intended to prejudice the right any party may have to challenge that form's correctness under appropriate circumstances.

5

1
2  _____
   CHARLES G. CASE II
3  UNITED STATES BANKRUPTCY JUDGE
4

5  **COPY** of the foregoing mailed by BNC and/or sent by

6  auto-generated email to:

7  Andrew S. Nemeth
   Phillips & Associates
8  3030 N. 3rd Street, #1100
   Phoenix, Arizona 85012
9  Counsel for Debtor

10 Laura Kagenveama
   26 E. Erie Drive
11 Tempe, Arizona 85282
   Debtor
12
   Edward J. Maney
13 P.O. Box 10434
   Phoenix, Arizona 85064-0434
14 Chapter 13 Trustee

15 Office of U.S. Trustee
   230 N. First Avenue, Suite 204
16 Phoenix, Arizona 85003

17

18 _____

19

20

21

22

23

24

25

26

27

28